Good morning, everyone. We have five cases on today's calendar. Two will be on submission. That's 24-43 combined with 24-71 and 24-1527. We'll take those cases under advisement. We have three cases to be argued, and I am told all counsel are present, so we'll dispense with the reading of the calendar. Before we begin, let me just send a welcome to visitors today here from John Adams High School back there. There you are. Greetings and welcome. This is a public courtroom, and you're always welcome here. We're very glad to have you today, so thank you for being here. With that, we'll begin with our first case to be argued, 24-1061, MCGM v. OPTA Group LLC. Mr. Goldenberg, you've reserved two minutes for rebuttal. You may proceed when you're ready. Good morning, Your Honors. May it please the Court, Andrew Goldenberg for appellant MCGM, GmbH. This case is about a fraudulent scheme through a series of covert agreements and maneuvers orchestrated to take over a company called SKW. The company was taken over at a time where it was valued at 120 million euros, and it was purchased for 4 million euros, depriving shareholders, including appellant, of their rightful equity. Now, we submit here that the appellant's claims meet the 12B pleading requirements. And the question for this court on appeal is whether appellant has a valid claim under the law based on the facts alleged in the Fourth Amendment complaint. We submit that it does. So I'll start with the main one, which is fraud. Fraud and conspiracy to commit fraud. The complaint sufficiently alleges- The fraud claim is vis-a-vis Mr. Michelle, correct? It's vis-a-vis Mr. Michelle, who- And then there's the conspiracy to commit fraud with respect to other defendants. That's correct, Your Honor. Michelle is not before us today. Kay Michelle is not before us today. So really, you're going to try to establish that it states a claim for conspiracy to commit fraud with respect to any served defendants who are on appeal. That's correct, Your Honor. We are trying to assert this claim against the appellees. Michelle Kay is not an appellee here. So what we're seeking to do is first establish the fraud. The district court did actually state in its decision that fraud was adequately alleged here. So we have- I thought it assumed that fraud was adequately alleged. Excuse me? I thought it assumed that fraud was adequately alleged, which is different than saying it was adequately alleged. Okay, so let's focus on what was alleged here. So we have the first element of fraud, a material omission. The omission was omitting the fact that there was this agreement that declared business discussions for a business combination between SKW and OPTA. It wasn't disclosed to the shareholders for at least a year. It's material because it contemplated wiping out all of the shareholder equity, including appellant's equity. That agreement was followed by a term sheet, and that term sheet laid out how Spayside, this is the private equity firm from the U.S., would buy a 120-million-euro company for $4 million. It was a convoluted step of taking the company's debt, which was $74 million, that was controlled by three lenders, negotiating it down to $48 million, and then using that $26 million delta as a way to forgive SKW through a debt equity swap and obtain a 100% stake in the company through an insolvency for only 4 million euros out of pocket. That's what's alleged in the complaint. And all this was done without disclosing any of it to the shareholders. So we have the material omission. We have misstatements. The misstatements alleged in the complaint are Michelle continually assuring shareholders that they would be able to participate in any capital raise, and at the same time saying, look, the business is doing okay. We don't need money at this time, but if we do, we're going to come to you, and we're going to give you subscription rights so that if we have to issue additional shares, we can do it at a predetermined price so as not to dilute you. And based on those assurances, the shareholders, they relied on it. They relied on the fact that this CEO was telling them what they needed to know and that if there was any material transaction that was going to be contemplated, it would be disclosed to them, but it wasn't. And they didn't find out about it until it was too late. And as a result, we have the last element of fraud, damages, complete wipeout of their equity stake because the result of all this was. So who exactly did Michelle conspire with in that fraud that you've just described? Michelle conspired with Opta Group. At the time, it was Opta Minerals, but Opta Minerals was acquired by Spayside, the private equity firm, and then Opta Minerals combined with SKW, and those two entities then were merged into Opta Group. Opta Group is an appellee here. Well, at the time of the alleged conspiracy, who did Michelle conspire with? With Spayside, the equity firm, the private equity firm, Opta Minerals, and the executives. Spayside, but what's the name of the entity? You often allude distinctions by just saying things like Spayside or Opta. Right, so the entity— It's hard to keep track, to be honest, when you do that. And I apologize, Your Honor. It's a pretty complicated transaction that happened here, but I'm referring to Spayside Equity LLC, Spayside Private Fund Advisors, Spayside Private Fund LLP, Spayside Equity One LLP. And so which of those entities are served defendants and on appeal? Spayside Equity One LP. Okay, so what allegations in the complaint allege the conspiracy between Michelle and the entity you just named, since that's the only entity in issue? That was the entity that helped facilitate the acquisition of SKW. Point me to lines in the complaint that allege that entity's involvement in a conspiracy to commit fraud. Your Honor, it's—well, we have paragraph 45, which is at A113. Spayside Equity Fund One announced that—well, it was a limited partner that would invest 130 million euros through Spayside Private Fund to fund the Spayside Equity projects, and one of which was this acquisition of SKW. There are other paragraphs in here, but I don't want to waste time going through all of them. But I understand that there are various entities here, but the bottom line is that we have a private equity fund that conspired with a German executive to buy this company through its sister company, Spayside One, bought Opta Minerals, and then took Opta Minerals, combined it with SKW, and merged it into Opta Group, which is another appellee who was served here. May I ask, so that I'm clear on who you're claiming is the conspirators? The district court dismissed the fraud claim against Spayside Equity, One LP, Stone, and Mayer, and I didn't see or don't understand you to be challenging the dismissal of those defendants on appeal. Did I overlook something? Well, Your Honor, I think we're challenging the dismissal of the fraud claim. Well, I understand the only party against whom the fraud claim was pursued after dismissal of those individuals was Opta Group. And so the question is whether you've adequately pleaded an agreement between Opta Group and another conspirator. Isn't that right? I believe so, Your Honor. That's the only issue on appeal. Okay, with respect to Opta Group, the amended complaint seems to allege that it's a company organized or controlled by Spayside, that it intentionally and without authority from the shareholders controlled the personal property belonging to the shareholders, and the ownership of SKW in the form of shares was illegally converted into the possession of Opta Group. Are those the allegations that are the basis for finding Opta Group to be involved in a conspiracy, or is there more? I believe there's that. There's also the press release that was issued in 2023, but was talking about how Opta Group merged with SKW back in 2019, and it referred to this exact transaction. The district court, as I understand it, thought that the allegations that I referenced, the three, were conclusory, and that because Opta Group did not even exist when the insolvency plan was finalized and plaintiff was allegedly squeezed out of SKW, that the complaint did not allege that Opta Group reached an agreement with Michelle. Now, why is that error that we would think about giving you relief from? Because that's really the only issue here, unless I'm mistaken. I think if you look at it and you take a step back, how was it formed here? Well, I understand that its formation might be related to the fraud, but you're charging it with being a conspirator. Because it ultimately is part of the same P.E. umbrella. All the same individuals formed all these companies. The fact that Opta Group may have been formed after the insolvency now controls these assets. Well, the conspiracy is this agreement among the same people that control all these entities to take this valuable company and acquire it for nothing. Well, I understand how that allows you to sue the individuals that you just alluded to. But I'm not sure how a company that they then create as part of their scheme is a conspirator. Well, there are individuals on this appeal. There are individuals who orchestrated this conspiracy. I thought we agreed a moment ago that Opta Group is the only acolyte whose conduct is at issue for purposes of a fraud conspiracy. I believe we did, Your Honor. I just have to double check the decision. That's what Your Honor stated from the decision. Look, there's not just fraud here. There's a promissory estoppel. Those are other charges. Those are other charges. I don't know if I'm running out of time here or I'm out of time. You're out of time. You do have two minutes for rebuttal so you can address the additional claims. Okay, thank you, Your Honor. Thank you. Mr. Ullman? Thank you, Your Honor. May it please the court. Anthony Ullman for Defendants Appellees. Can you adjust the microphone or the lectern?  Both of them. Sorry. Is this better? You can look. There's a button that will lower it in case. Lean over a little more. Is that better? Is this good? Keep your voice up. I'll try to speak louder. Okay. Of the four claims in the fourth amended complaint, the FAC, we showed in our brief why all of them were properly dismissed by the lower court. In its opposition, plaintiffs did not respond to three of them, anything except the fraud with co-conspirators, thereby effectively conceding the remaining claims. So I'm going to focus on the fraud claim, which is the only one that the other side addressed. As the court is aware, Judge Castell held, and rightly so, that the FAC failed plausibly to allege that any appellee had entered into a corrupt agreement with Michelle, which is what would be necessary to state a claim of fraud by conspiracy, which is what is at issue here. As the court has pointed out, they conceded that there was no claim of conspiracy with respect to Stone, Mayer, and the Fund, leaving only the Opta defendants, which would be Opta Minerals and Opta Group. And as to Opta, those defendants, MCGM argues that there was a corrupt agreement because Opta Minerals signed the 2016 confidentiality agreement and then acted jointly with Michelle to purchase the debt of SKW and put it into bankruptcy. But first of all, that argument, asserting joint activity by Michelle with Opta Minerals, goes well beyond what was pled and so should not be considered. And to the extent it is considered, it has no merit. First of all, while plaintiff argues the 2016 confidentiality agreement was an agreement to merge SKW with Opta Minerals and to keep that agreed-upon merger secret from the SKW shareholders, that argument lacks any plausible basis. The agreement by its terms did not contain any agreement to merge SKW with Opta Minerals. It stated only that the parties were discussing a potential but unspecified transaction and as part of that would be exchanging confidential information. The so-called agreement to merge is nothing more than a standard confidentiality agreement. And the 2016 confidentiality agreement did not in any way say that the parties to it would withhold any information from the shareholders that they were required by law to disclose. On the contrary, the 2016 confidentiality agreement plainly stated, and this is in Section 7, that each party was permitted to make any disclosure required by law. Now in its papers, MCGM seemed to argue that, well, that was only provided for disclosure in some narrow circumstance that's not applicable here. Untrue. It was a broad unqualified statement that said, if there's a disclosure that's required by law, you're permitted to make it. Thus, any claim that there's a corrupt agreement with Opta Minerals based on the confidentiality agreement is not only unsupported by that agreement, but flatly belied by it. And there were no other factual, there were no other allegations in the complaint that subsequent to the 2016 agreement or for the matter of that before it, Opta Minerals entered into any kind of agreement with K. Michel. And presumably for these reasons, Opta Minerals was later voluntarily dismissed as a defendant during the proceedings below. Now as to Opta Group, as the court pointed out, that company was not a party to the 2016 agreement. It didn't even exist at the time. Instead, MCGM argues that Opta Minerals was merged into Opta Group so as to make Opta Group liable as a successor. But the allegations of merger that are contained in the FAC are wholly conclusory, which is insufficient under Iqbal and Twombly. Further, they're rendered implausible by the language, by the allegations of the FAC itself, which itself alleges that Opta Minerals exists and operates in its own name. On merger, what are plausible allegations of merger? It would be some factual allegation that on such and such a date, a merger agreement was entered into, a merger agreement was signed, the shares were transferred. All we have is a vague and conclusory allegation that the company's merged. Nothing more. And we cited case law saying that that's enough. But equally important, two things. First, the complaint, the FAC itself, as I just mentioned, elsewhere says that Opta Minerals is operating and existing as a separate company in its own name, which renders the conclusory allegation of merger implausible on its face. And further, as we've pointed out in our papers, in our corrected brief, specifically at footnote 13, the Canadian registry of which this court can take judicial notice shows that Opta Minerals, which is now known as Opta Inc., is indeed a separately currently existing company in its own right. No merger with anything else. So all of that combined says that there's no allegation of merger that's even remotely plausible. And further, and there are no other allegations that Opta Group has entered into any agreement with Michelle. Mr. Ullman, can you give us the benefit of your learning on the law of Bavaria? What are we to make of the decision of the regional court of Munich that's been submitted to us? Yes, Your Honor. Well, the regional court, this is the July 2024 decision. That was a decision where after the insolvency proceedings, when the plan was allowed to go forward, the plaintiff and other shareholders were allowed under German law to bring a proceeding against the company saying that they had been deprived of value because of the fact that they were losing their equity. And that proceeding went forward, and there was a full hearing and a decision in July of 2024 by the regional court. And when that court held, and that's something that this court can take judicial notice of, it is entitled to comity, it went through the proceedings. It found, first of all, there was no kind of plan or secret agreement or anything like that. It detailed the history of the transaction based on the evidence that was before it, and MCGM was one of the plaintiffs there and had even submitted an expert opinion during the insolvency proceedings. What the court found specifically, and I believe this is at pages 12 through 13 of its opinion, was that prior to the insolvency, an outside investment firm called Macquarie had been retained to try to find an investor, someone to come in and buy the equity and do a deal. And at the end of the day, they found no one, and that resulted in one of the Spayside entities purchasing the loans, which it did at arm's length, and that's alleged in the complaint in the FAC at paragraph 103. It's just a transaction between the lenders and Spayside. Afterwards- If we adopt, if we accept, as you suggest, the decision of the regional court of Munich, what's the legal effect of that? Well, it says they have no claim. Does that dispose of the claim? It disposes, if you accept that as we believe you should, that disposes of the claim. It says there was no fraud, and it says- Is that a matter of preclusion law or what? I believe it's entitled to comity, which it's not, you're not required to accept it, but under comity, deference should be given to it, and if you accept it as stated, the court squarely held that, first of all, there was no collusion, no plan, and second, that the value of the equity was zero. So that even if the shareholders had some kind of argument, what they lost, they had no damages because the value of the equity was zero, and this was after they had put in their own expert to try to show that that wasn't true, and the insolvency court rejected it, the appeals court rejected it, and when they had their final opportunity to make their argument to the regional court, the regional court rejected it. So I believe that that really ends the issue of the fraud claim. They made a couple of other arguments as to the substance of the fraud. I would just point out that they had two new arguments in their opening brief and also in their reply brief, and I would just point out that none of that was pled in the complaint. The complaint alleged that the fraud was in the nondisclosure of four specific documents. That argument has largely been abandoned on appeal and for good reason because the FAC itself alleged that the facts that these four documents supposedly contained were disclosed. For example, the FAC alleges that in July of 2017, there was a press release stating that there was going to be a loan purchase agreement and that there was going to be a debt for equity swap that would leave the shareholders with nothing. This was disclosed in July. It was further disclosed, I believe, in August. All of this is in the FAC, so the idea that there was any kind of fraud, that there was some scheme that the shareholders were unaware of is ridiculous, and pre-insolvency, all of those proposals, this was for the debt to equity swap. There was a term sheet and another document, both of which were attached to the FAC. Both of them said that if there's going to be a debt for equity swap, it's subject to approval of the shareholders. And the FAC says, we knew that, and the shareholders weren't going to approve it. So where's the fraud? Where's the damage? Even taking things at face value, everything was disclosed. You said the FAC says the shareholders were going to approve it. We're going to reject it. Sorry if I misspoke. They were going to reject the proposed debt for equity swap. And so where's the fraud? Thereafter, the company went into insolvency. MCGM argued against the insolvency plan at the end of the day, and as the regional court found, there was a full investigation carried out for potential bidders by Macquarie. No one else came out. This was basically the only plan. It was certainly the only plan that was going to provide for full relief to the creditors, and the insolvency court accepted it. And that is what happened. There is no claim. Thank you, Mr. Ullman. Thank you, Your Honors. Mr. Goldberg, you have two minutes. Thank you, Your Honors. So just to pick up on the last point that was made, yes, the shareholders didn't approve of this plan. They had offered many alternatives pre-insolvency, and when Michelle knew that the shareholders would not approve the stripping of their entire equity, what happened was this insolvency. Now, to Judge Cabranes' question, what do we do with what happened in Bavaria, I submit that the court should not take judicial notice of the ruling or the decision because it's based on factual findings that are disputed. And when we have disputed facts, we should have the opportunity to oppose, submit rebuttal evidence, cross-examine. They were disputed but resolved by the court in Munich, right? They were disputed and resolved by the court in Munich, but that's not this court, obviously, and this court does not need or should not take judicial notice of it. There's also no claim preclusion because we don't have the same parties. Perhaps there's some argument on comedy, but I submit that because of judicial – How about issue preclusion? Well, on issue preclusion, I think it's the same issue, is that we don't have the same claims, the same parties. We have different parties here. We don't have Opta. We don't have Space Side. We don't have these individuals that were involved in the insolvency. And as far as the merger question – Maybe I haven't understood you on this. To the extent that the agreement says that they can act in accordance with law, why isn't the German court's decision basically provides them with that authority now? They're acting pursuant to what the German court concluded. It's not that they did it out of whole cloth themselves. How do we deal with that? I think you've got to look at the specific allegations of how this whole thing happened and their failure to disclose material agreements. This was not just a confidentiality agreement. This was a plan orchestrated by the appellees to strip this company. This is 2,000 shareholders. They have nothing now. They had a valuable company, 120-million-euro company, and within one year, they had nothing. And just one point because I didn't get to the other claims. I ask your honors to at least focus on conversion, for example. We have prior ownership of a corporation. That's something that can be converted. We're not talking about paper here or equity stock certificates. We're talking about ownership in a corporation. And here are the undisputed facts. Beginning of 2017, we had a public company that was trading on the Frankfurt Stock Exchange. At the end of 2017, we had SKW wholly owned by Opta Minerals at the time. But it's the German court's insolvency order that effectuates what you're arguing is the conversion, right? Right. It's the insolvency plan that effectuated. But I'll submit on that point, and this goes to the Dexter case that was cited by Judge Cassell, that the insolvency plan was submitted based on misrepresentations of over-indebtedness. The company was not over-indebted. Allegations in the complaint would go to a conclusion that misrepresentations were made to the court that entered the insolvency order. I don't have the specific ones, Your Honor. But what was submitted to the insolvency court was this company has no money to pay its debts. This company should be sold to this private equity firm. And there are many allegations in the complaint, and all reasonable inferences should be drawn in our favor, that say pre-insolvency, there were several instances where Olaf Marx, this was one of the gentlemen who was on the supervisory board who represents MCGM, said, I got another plan for you. Why don't we sell some non-core assets? Why don't we include this company, Robus, that can raise some money? Why don't we go after this other company, Metal Corp? They can help us raise money. All those offers pre-insolvency were rejected. They were ignored.  Because the plan all along was to sell this company at no matter what the cost to Spayside and its affiliates. But whatever that may do for helping you with other claims, since the act of conversion was authorized by the German court order, which is still in force and effect, there's no finding that it was invalid in Germany. I don't know how you can argue conversion here. I mean, they took their action pursuant to a court order. Right. And to the extent you are arguing that that court order is invalid, what is your statement for how we decide that? I think you just have to look at the basic elements of conversion. We had a possessory interest ownership rights in the company, and they interfered with those rights. And now the company that has that equity is OptiGroup. And you're saying do that by ignoring the fact that there was a court order? Not ignoring the fact that there was a court order, but paying attention to the specific allegations in the complaint that talk about acts that were taken pre-insolvency, why the insolvency was filed in the first place, and what resulted from the insolvency, which was zero to MCGM. All right. Thank you, Counsel. Thank you, Your Honors. We'll take the matter under advisement. And the case is submitted.